## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEKAEDA DAVIS, | : | Civil No. 1:25-CV-01162 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CUMBERLAND VALLEY SCHOOL | : | |
| DISTRICT, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Plaintiff Dekaeda Davis ("Davis") is a Cumberland Valley High School ("CVHS") student and former member of the school's junior varsity cheerleading team.  (Doc. 28, ¶¶ 1, 108, 133.)  Davis claims she faced disability- and sex-based discrimination and bullying as a Cumberland Valley School District ("CVSD") student athlete, and that Defendants either participated in that discrimination and bullying or unlawfully failed to correct it.  (*Id.* ¶¶ 139–200.)

CVSD, Michael Craig ("Craig"), Harold "Bud" Shaffner, Gregory Rausch ("Rausch"), Kristi Shaffner, and Bethany Mullin ("Mullin") (collectively, "Defendants") filed motions to dismiss Davis's amended complaint and to strike specific allegations contained therein.  (Docs. 31, 36.)  Those motions are before the court, and for the reasons explained herein, the court will grant them in part and deny them in part.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

According to the amended complaint, Rausch is the president and Harold "Bud" Shaffner is a member of the CVSD School Board ("the Board"). (Doc 28, ¶ 11(a)–(i).) Craig is the CVHS athletic director. (*Id.* ¶ 14.) Kristi Shaffner is the head coach of the CVHS cheerleading and competitive spirit team ("the cheerleading team" or "the cheer team"). (*Id.* ¶ 22.) Mullin "was employed by and/or otherwise associated with and paid by CVSD to serve as a choreographer and coach of CVHS's cheerleading/competitive spirit team." (*Id.* ¶ 24.)[1] Davis alleges CVSD receives federal funding. (*Id.* ¶ 158.)

In December 2015, Davis was diagnosed with "significant unilateral hearing loss." (*Id.* ¶ 101.) Davis's doctor identified specific accommodations that Davis would need to participate safely in cheerleading due to her disability. (*Id.* ¶ 102–103.) For example, Davis's physician required that she be "positioned in the middle of the mat rather than at the front, back, or sides which ensured she had a clear view of her teammates." (*Id.* ¶ 104.) Davis's mother told Davis's cheer coaches, including Kristi Shaffner, that Davis needed these accommodations, and the coaches were aware of her need for accommodations "[a]t all times." (*Id.* ¶ 106, 116.)

---

[1] The court sometimes refers to Craig, Harold "Bud" Shaffner, Kristi Shaffner, Mullin, and Rausch as "the individual Defendants," collectively.

Davis made CVHS's junior varsity cheer team as a middle schooler in 2020. (*Id.* ¶ 108.) She alleges that during the 2020 cheer season and preceding summer, she and her teammates were held after practice and their parents were prevented from checking on them, causing them to suffer an increased risk of injury, decreased performance, and "[a]n impaired ability to learn the skills with which they were having difficulty." (*Id.* ¶¶ 109–11.) Moreover, her coaches placed her in the second-to-last row of the team's cheerleading formation. (*Id.* ¶ 113.) This positioning contradicted the accommodations set by Davis's doctor. (*Id.* ¶¶ 113–14.)

Davis's mother had "extensive discussions" with Kristi Shaffner and Mullin about the accommodations Davis needed to safely participate as a member of the cheer team. (*Id.* ¶ 117.) Kristi Shaffner and Mullin did not agree to accommodate Davis. (*Id.* ¶ 118.) Instead, they "suggested" that Davis and her mother "might find greater satisfaction cheering elsewhere." (*Id.*) Davis went to Craig next. (*Id.* ¶ 119.) Craig told Davis's mother that he would "look into the matter," but when she followed up with him, Craig said "there was nothing for him to address relative to Mrs. Davis's complaint that no accommodations were being provided to" Davis. (*Id.* ¶ 121.)

Davis avers that her cheer coaches prevented her from participating in cheer competitions "as retaliation for requesting reasonable accommodations for her

3

disability." (*Id.* ¶ 123.) When she did compete in February 2020, she "missed a stunt due [to] not having a clear line of sight as required for her disability." (*Id.* ¶ 124.) After Davis missed the stunt, her mother encountered three of Davis's teammates watching a video of Davis's performance and "brutally mocking [Davis] and laughing at her." (*Id.* ¶ 125.) Davis's mother "suggested to them that encouragement might lead to a more favorable outcome than viciously mocking a mishap that occurred as a result of not providing accommodations" for Davis's disability. (*Id.* ¶ 126.) In response, another cheer team parent "threatened [Davis's mother] with physical harm." (*Id.* ¶ 127.) Davis or her mother reported the incident to the cheer team coaches, who were "more concerned" about Davis riding home from the competition with her mother instead of on the team bus. (*Id.* ¶ 128.)

Davis's mother removed Davis from "all aspects of the CVSD cheer program" because the coaches would not provide accommodations for Davis and because she wanted to avoid "the continued risk of harassment and violence from cheer parents believed to be effectuated by the [coaches] for requesting accommodation for [Davis]." (*Id.* ¶ 129.) Davis alleges that the coaches[2] encouraged her teammates and their parents to "bully and harass" her into quitting

---

[2] Drawing all reasonable inferences in Davis's favor, the court assumes Shaffer and Mullin are "the coaches." (Doc. 28 ¶ 129, 130.)

the team because she requested disability accommodations.  (*Id.* ¶ 130.)  She claims the bullying and harassment were directly related to her disability and that Defendants "condoned such behavior or were aware of the same and did nothing." (*Id.* ¶ 131.)

Even though she left the cheer team, Davis was "bullied, mocked, and harassed by her former teammates" when she returned to school for her ninth-grade year.  (*Id.* ¶ 133.)  She engaged in self-harm as a reaction to the bullying. (*Id.* ¶ 134.)  Davis eventually began attending school via virtual instruction.  (*Id.* ¶ 135.)  She suffered extensive emotional and physical harm as a result of the "discrimination, harassment, and bullying she endured . . . ."  (*Id.* ¶¶ 136–38.)

Davis alleges that there is a long history of unaddressed bullying and discrimination at CVSD, and that the school gives preferential treatment to male students and athletes.  (*Id.* ¶¶ 27–81.)  She describes two specific incidents that she believes are relevant to her amended complaint.  (*See id.* ¶ 122.)  In 2015, a male CVSD athlete hit a football teammate.  (*Id.* ¶ 48.)  The teammate needed multiple surgeries after the incident and never played football again, but the athlete was allowed to stay on the football team.  (*Id.* ¶¶ 48–49.)  The same athlete called another student a racial slur in 2018 but was merely suspended for his behavior, even though two school board members "recommended that the student be banned from any participation in sports due to his history of bad behavior and

indiscretion." (*Id.* ¶ 50.)  Davis claims these incidents show that, had she been a male athlete, CVSD and her coaches would have accommodated her disability properly.  (*Id.* ¶¶ 122, 132, 137.)

Davis sued Defendants on June 26, 2025.  (Doc. 1.)  She filed an amended complaint on September 26, 2025.  (Doc. 28.)  Mullin, Rausch, Harold "Bud" Shaffner, and Kristi Shaffner filed a motion to dismiss and to strike pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) and an accompanying brief in support.  (Docs. 31, 33.)  CVSD and Craig filed a separate motion to dismiss and strike and brief in support.  (Docs. 36, 40.)  Davis filed an omnibus brief in opposition to both motions.  (Doc. 41.)  Mullin, Rausch, Harold "Bud" Shaffner, and Kristi Shaffner filed a reply brief.  (Doc. 42.)  So did Craig and CVSD.  (Doc. 43.)  Accordingly, both motions to dismiss and strike, Docs 31 and 36, are ripe for disposition.

## JURISDICTION AND VENUE

The court has jurisdiction pursuant to 28 U.S.C. § 1331.  The court has jurisdiction over Davis's state law claims, specifically, under 28 U.S.C. § 1367(a).  Venue is proper under 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

Defendants move to dismiss Davis's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike specific allegations therein pursuant

6

to Federal Rule of Civil Procedure 12(f).  (Doc. 31, pp. 2–9; Doc. 36, pp. 1–9.)  In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3rd Cir. 2020).

Under Federal Rule of Civil Procedure 12(f), a party can move a district court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  This rule is "designed to reinforce the requirement in Rule 8 . . . that pleadings be simple, concise, and direct."  5C CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2020 update). To that end, the purpose of any motion to strike should be to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (citation omitted).

Motions to strike should not be used to persuade a court to determine disputed questions of law. *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D.N.J. 1993) (citations omitted). They also "may not serve as an avenue to procure the dismissal of all or part of a complaint." *Davila v. N. Reg'l Joint Police Bd.*, 979 F. Supp. 2d 612, 624 (W.D. Pa. Oct. 21, 2013), *vacated in part on reconsideration*, 2014 U.S. Dist. LEXIS 102143 (July 28, 2014) (citing *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 530–31 (D.N.J. 2012)).

The burden rests with the moving party to show that the challenged matter should be stricken. *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019). Thus, the movant must demonstrate that the matter falls within one of the categories listed in Rule 12(f). "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995)). "Impertinent" matter consists of "statements that do not pertain, and are not

8

necessary, to the issues in question." *Id.* (citation omitted).  And "scandalous"

matter is that which "casts a derogatory light on someone, uses repulsive language,

or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen*, 121 F.R.D.

231, 232 (M.D. Pa. 1988)).

## DISCUSSION

Davis's amended complaint contains six counts.  (Doc. 28 ¶¶ 139–200.)

Count I brings a Title II of the Americans with Disabilities Act, 42 U.S.C. §§

12131–65 ("Title II of the ADA"), claim against CVSD ("Title II of the ADA

claim").  (Doc. 28, ¶¶ 139–54.)  Count II brings a Section 504 of the Rehabilitation

Act, 29 U.S.C. § 794, claim against CVSD ("RA claim" or "Section 504 of the RA

claim").  (Doc. 28, ¶¶ 155–70.)  Count III raises a 42 U.S.C. § 1983 claim alleging

a violation of the Equal Protection Clause of the Fourteenth Amendment to the

Constitution of the United States, U.S. Const. amend. XIV, § 1, against all

Defendants ("Equal Protection claim").  (Doc. 28, ¶¶ 171–81.)  Count IV brings a

sex discrimination claim under Title IX of the Education Amendments of 1972, 20

U.S.C. §§ 1681–1688, claim against CVSD ("Title IX claim").  (Doc. 28, ¶¶ 182–

89.)  Count V brings an intentional infliction of emotional distress claim against all

Defendants ("IIED claim").  (*Id.* ¶¶ 190–94.)[3]  Count VI brings a negligent

---

[3] The court assumes Davis brings her state tort claims under Pennsylvania law.  (*See* Doc. 41, p.
8 (citing Pennsylvania caselaw in support of tort claims).)

infliction of emotional distress claim against all Defendants ("NIED claim").  (*Id.* ¶¶ 195–200.)

The court will first address CVSD and Craig's argument that all of Davis's claims are time-barred.  (*See* Doc. 40, pp. 15–16.)  Then, it will evaluate each claim, and the parties' corresponding arguments, in turn.  Finally, it will consider Defendants' motions to strike specific allegations from the amended complaint. (*See* Doc. 33, pp. 12–14; Doc. 40, pp. 36–37.)[4]

### A. CVSD and Craig's Statute of Limitations Affirmative Defense is not Clearly Applicable from the Face of Davis's Amended Complaint.

CVSD and Craig argue that all of Davis's claims are time-barred because they are subject to a two-year statute of limitations, and the events at issue took place in or around 2020.  (*Id.* at 15–16.)  In response, Davis claims she was a minor when the events at issue occurred, so the statute of limitations tolled until she turned eighteen.  (Doc. 41, p. 9.)  The amended complaint avers that she is eighteen, so she argues her claims are timely.  (*Id.*)  In reply, CVSD and Craig argue that the complaint's averment that Davis is eighteen "only provides the 'mere possibility' that Plaintiff *may* be entitled to relief in as much as she may be within the two-year statute of limitations filing requirement."  (Doc. 43, pp. 13–14 (quoting *Ashcroft*, 556 U.S. at 679).)  Accordingly, they do "not know when the

---

[4] For ease of reference, the court uses the page numbers from the CM/ECF header.

applicable statute of limitations began" and are therefore "deprived of the opportunity to meaningfully advance valid defenses" to Davis's claims.  (*Id.*)

Failure to comply with the statute of limitations is an affirmative defense, but it "may be raised in a motion to dismiss where the plaintiff's failure to comply with the limitations period is apparent from the face of the pleadings."  *Frazier v. Pa. State Univ.*, 603 F. Supp. 3d 158, 165 (M.D. Pa. 2022) (quoting *Datto v. Harrison*, 664 F. Supp. 2d 472, 482 (E.D. Pa. 2009)).  Title II of the ADA, Section 504 of the RA, Section 1983, Title IX, IIED, and NIED claims brought in Pennsylvania are all subject to Pennsylvania's two-year statute of limitations for personal injury claims.  42 Pa. Cons. Stat. § 5524;  *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) [5] (Title II of the ADA and the RA); *Frazier*, 603 F. Supp. 3d at 166 (quoting *Datto v. Harrison*, 664 F. Supp. 2d 472, 482 (E.D. Pa. 2009)) (Title II of the ADA and the RA); *Bressi v. Brennen*, 823 F. App'x 116, 118 (3d Cir. 2020) (per curiam) (Section 1983); *Piety Foley v. Drexel Univ.*, No. CV 22-1777, 2023 WL 3767744, at *3 (E.D. Pa. June 1, 2023) (Title IX) (citing *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989));

---

[5] "[T]he statute of limitations applicable to claims under Title II of the ADA and Section 504 of the RA is the statute of limitations for personal injury actions in the state in which the trial court sits."  *Disabled in Action of Pa.*, 539 F.3d at 208; *see also Forbush v. Trs. of Univ. of Pennsylvania*, No. CV 24-4492, 2025 WL 2917090, at *3 (E.D. Pa. Oct. 14, 2025) (borrowing Pennsylvania's two-year statute of limitations for Title II of the ADA, Title IX, IIED, and NIED claims).

11

*Forbush v. Trs. of Univ. of Pa.*, No. CV 24-4492, 2025 WL 2917090, at \*3 (E.D. Pa. Oct. 14, 2025) (IIED and NIED).

When a federal court borrows a statute of limitations from the law of the forum state, it also incorporates that state's relevant tolling rules or exceptions to the normal statute of limitations. *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) (first citing *Hardin v. Straub,* 490 U.S. 536, 539 (1989); and then citing *Lake v. Arnold,* 232 F.3d 360, 368 (3d Cir. 2000)).  But not every tolling rule that applies to state personal injury claims also applies to federal claims that adopt state personal injury statute of limitations.

In *Fisher v. Hollingsworth*, the Third Circuit explained that federal courts evaluating the timeliness of federal claims without a prescribed statute of limitations should "borrow only state-law timeliness rules that apply across the board to personal injury torts. [They should] not borrow a state's tort-specific tolling and revival rules." 115 F.4th 197, 210 (3d Cir. 2024).  In *Fisher*, the plaintiff alleged a claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 399 (1971).  *Fisher*, 115 F.4th at 202. He argued that, although his claim would normally be time-barred under New Jersey's two-year personal injury statute of limitations, an exception applied: a statute that "created a window . . . for plaintiffs to bring sexual assault claims that were otherwise time-barred."  *Id.* at 210 (discussing N.J. Stat. Ann. § 2A:14-2b).

The court held that exception, or tolling rule, did not render the plaintiff's claim timely because it is a "specialized revival provision that applies only to sexual assault torts." *Id.* at 212. It recognized that:

> In constitutional tort cases, [other courts of appeals] borrow state tolling and revival rules that apply across the board to personal injury torts, but do not borrow tort-specific tolling and revival rules. Accordingly, "[o]nly generally applicable tolling provisions—such as those based on minority, incapacity, and equitable grounds—should be incorporated" in § 1983 and *Bivens* cases.

*Id.* at 211 (quoting *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014)). Therefore, because the offered exception was "not 'coordinate' or 'interrelated' with the general personal injury statute of limitations," the court could not apply that exception to "render [the plaintiff's] constitutional tort claims timely." *Id.* at 212 (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)).

The Third Circuit recently applied the same rule to a similar Pennsylvania statute in *Doe v. East Stroudsburg Univ. of Pa.*, No. 25-1875, 2026 WL 1330065, at *1 (3d Cir. May 13, 2026) (examining 42 Pa. Cons. Stat. § 5533(b)(2)(i.1)). In relevant part, that statute provides: "If an individual entitled to bring a civil action arising from sexual abuse is at least 18 and less than 24 years of age at the time the cause of action occurs, the individual shall have until attaining 30 years of age to commence an action for damages . . . ." 42 Pa. Cons. Stat. § 5533(b)(2)(i.1). The plaintiff argued that this provision rendered her Title IX and Section 1983 claims timely, even though she raised those claims after the expiration of Pennsylvania's

13

two-year personal injury statute of limitations, 42 Pa. Cons. Stat. § 5524.  *See Doe*, 2026 WL 1330065, at *3.  Relying on *Fisher*, the court held that 42 Pa. Cons. Stat. § 5533(b)(2)(i.1) did not save Doe's claims from untimeliness because "a court . . . cannot apply § 5533(b)(2)(i.1) without first analyzing the nature of the underlying claims to determine whether they arise from qualifying conduct . . . ," and "*Fisher* prohibits such analysis . . . ."  *Doe*, 2026 WL 1330065, at *3 (quoting *Fisher*, 115 F.4th at 212) (internal quotation marks and alterations omitted).

The court finds that the statutory tolling provision Davis invokes, 42 Pa. Cons. Stat. § 5533(b)(1)(i), is unlike those discussed in *Fisher*, 115 F.4th at 212, and *Doe*, 2026 WL 1330065, at *1.  (*See* Doc. 41, p. 9.)  Under Pennsylvania law, "a statutory minority tolling rule provides that where a cause of action accrues when the plaintiff is a minor, the statute of limitations does not begin to run until the plaintiff reaches the age of majority."  *J.C. v. Greensburg-Salem Sch. Dist.*, No. CV 18-1683, 2019 WL 3845749, at *11 (W.D. Pa. Aug. 15, 2019) (citing 42 Pa. Cons. Stat. § 5533(b)).[6]  Specifically, the provision states:

---

[6] Pennsylvania's minority tolling rule does not apply to free, appropriate public education RA claims.  *J.C.*, 2019 WL 3845749, at *11; *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 736 (3d Cir. 2009) (holding that the statute of limitations from the Individuals with Disabilities Education Act applies to free, appropriate public education claims brought under the RA instead of Pennsylvania's two-year statute of limitations for personal injury actions).  In Count II, Davis alleges that she received a free, appropriate public education, Doc. 28, ¶ 159, and CVSD did not argue that the minority tolling rule did not apply to Davis's RA claim in its reply brief.  (Doc. 43, pp. 13–14.)  Therefore, the court applies the Pennsylvania minority tolling rule to Davis's Section 504 of the RA claim.

14

> If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.

42 Pa. Cons. Stat. § 5533(b)(1)(i).[7]  This tolling rule applies generally, meaning that the court need not examine the nature of Davis's claims to determine whether it applies.  *See id.*  It provides that if Davis was less than 18 years old when the cause of action accrued, she has two years after her eighteenth birthday to file any claim subject to the Pennsylvania personal injury statute of limitations, 42 Pa. Cons. Stat. § 5524.  This is the type of general tolling rule that the court borrows alongside the personal injury statute of limitations because it applies "across the board" and not to a specific category of tort claims.  *Fisher*, 115 F.4th at 210.  Indeed, the court in *Fisher* recognized that "[o]nly generally applicable tolling provisions—such as those based on *minority*, incapacity, and equitable grounds— should be incorporated."  *Id.* at 211 (quoting *Varnell*, 756 F.3d at 1213) (emphasis added); *see Angle v. Hayes*, 584 F. App'x 34, 35 (3d Cir. 2014) (applying 42 Pa. Cons. Stat. § 5533(b)(1)(i)–(ii) to a Section 1983 claim) (per curiam).

Accordingly, if Davis was a minor when her federal claims accrued and two years did not pass between her eighteenth birthday and the date she filed her

---

[7] "As used in this paragraph, the term 'minor' shall mean any individual who has not yet attained 18 years of age."  42 Pa. Cons. Stat § 5533(b)(1)(ii).

15

claims, her state and federal claims are timely. 42 Pa. Cons. Stat. § 5533(b)(1)(i). Many, if not all, of the relevant events described in the amended complaint occurred in or around 2020. (*See* Doc. 28, ¶¶ 98–138.) But the amended complaint also alleges that Davis is eighteen years old. (*Id.* ¶ 1.) Therefore, two years did not pass between the day Davis turned eighteen—when the statute of limitations applicable to her claims began to run—and the day she filed her amended complaint. (*See id.*) Accordingly, Davis's non-compliance with the applicable statute of limitations is not clear from the face of her amended complaint, and the court will not dismiss her claims on this basis. *See Frazier*, 603 F. Supp. 3d at 165–67. CVSD may raise this affirmative defense again at a later stage of litigation. Considering only the amended complaint, however, the court cannot determine that it applies to Davis's claims. *See id.*

**B. Davis Adequately Pleads that CVSD Deliberately Discriminated Against Her by Failing to Provide Her Reasonable Accommodations in Violation of Title II of the ADA and Section 504 of the RA.**

Davis alleges that she is disabled due to her unilateral hearing loss, that CVSD received federal financial assistance, and that CVSD unlawfully prevented her from participating in cheerleading by failing to provide her with reasonable accommodations even though she was otherwise qualified to compete with the

16

team.[8]  (Doc. 28, ¶¶ 108, 139–45, 148, 151, 157–58, 164.)  She also claims that

there is a "hostile, discriminatory environment" tolerated by the Board and others

at CVSD that "led the Coaches and Ms. Davis's teammates to believe that they

could harass and bully [Davis], and force her off the team, because of her

disability."  (*Id.* ¶¶ 146–54, 162–170.)  She alleges CVSD violated both Title II of

the ADA and Section 504 of the RA.  (*Id.* ¶¶ 140, 156.)  Davis seeks compensatory

damages and attorney's fees under both claims.  (*Id.* ¶¶ 154, 170.)

CVSD argues that Davis fails to properly plead Title II of the ADA and RA

claims and asserts that she improperly requests emotional distress damages under

those claims.  (Doc. 40, pp. 17–19.)  Davis, it argues, does not allege the school

district prevented her from participating in the cheerleading program because of

her disability by failing to provide her requested accommodations.  (*Id.* at 18–19.)

In response, Davis only argues that she has sufficiently alleged that she suffered

discrimination through CVSD's failure to offer her accommodations.  (Doc. 41, p.

4.)

CVSD also argues that Davis cannot recover emotional distress damages

pursuant to Title II of the ADA and Section 504 of the RA. (Doc. 40, p. 19.)  In

---

[8] "With limited exceptions, the same legal principles govern ADA and RA claims." *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (footnote omitted).  The elements of a claim brought under Title II of the ADA are the same as those of a claim brought under the RA, "except that the plaintiff must also show that the program in question received federal dollars" under the RA.  *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023).  Accordingly, the court addresses Davis's Title II of the ADA and Section 504 of the RA claims together.

response, Davis claims she does not seek emotional distress damages in her amended complaint.  (Doc. 41, p. 5.)  Instead, she seeks compensatory damages "related to the treatment for emotional injury and not the emotional injury itself." (*Id.*)  CVSD argues that this type of compensatory damages is also unrecoverable under Title II of the ADA and the RA.  (Doc. 43, pp. 4–5.)

Title II of the ADA and Section 504 of the RA "require public entities . . . to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities."  *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019).  To state a claim under either statute, Davis must allege that she is a qualified individual with a disability and that she was "precluded from participating in" or denied the benefits of "a program, service or activity" offered by a public entity "or otherwise was subject to discrimination[] by reason of [her] disability" by a public entity.  *Id.* at 288–89 (citing *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.*, 587 F.3d 176, 189 n.19 (3d Cir. 2009)); *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023); *see* 42 U.S.C. § 12132; 29 U.S.C. § 794.  To plead her RA claim, she must also allege that the public entity or "program in question" received federal funds.  *Durham*, 82 F.4th at 225.  Davis seeks compensatory damages, Doc. 28, ¶¶ 154, 170, so she must also show "intentional discrimination under a deliberate indifference standard." *Furgess*, 933 F.3d at 289.

Davis alleges that CVSD is a public entity that receives federal funding and that she is a qualified individual with a disability. (Doc. 28, ¶¶ 115, 141, 142, 158.)[9] CVSD does not dispute these allegations. (*See* Doc. 40, pp. 17–19; Doc. 43, pp. 4–6.) It also does not dispute that the opportunity to participate in its cheerleading program qualifies as one of the services, programs, or activities it provides to its students as a public entity. (*See id.*); 42 U.S.C. § 12132; 29 U.S.C. § 794(a); *Montanez v. Price*, 154 F.4th 127, 147 (3d Cir. 2025) (explaining that the definition of "services, programs, or activities" as that phrase is used in Title II of the ADA and "program or activity" as used in Section 504 of the RA are interpreted broadly), *petition for cert. filed*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073); *Starego v. N.J. State Interscholastic Athletic Ass'n*, 970 F. Supp. 2d 303, 308 (D.N.J. 2013) (discussing the application of 42 U.S.C. § 12132 to high school sports as a service, program, or activity offered by a school). CVSD only argues that Davis fails to allege that it discriminated against her or prevented her from participating in its cheerleading program because of her disability. (*See* Doc. 40, pp. 17–19.) Accordingly, it challenges the causation and intent elements of

---

[9] *See Doe 1 v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668, 686 n.41 (E.D. Pa. 2022) (explaining that Title II, not Title III, of the ADA applies to "public entities such as public school districts").

Davis's Title II of the ADA and Section 504 of the RA claims.  *See Furgess*, 933

F.3d at 288–91.

The causation standards for Title II of the ADA and RA claims are different.

*Durham*, 82 F.4th at 226.  "[U]nder the RA, the disability must be the sole cause of

the discriminatory action, while the ADA only requires but-for causation."  *Id.*

Davis alleges CVSD failed to provide her with reasonable accommodations for her

disability, and in doing so, it prevented her from participating in and benefitting

from her school's cheerleading program.  (Doc. 28, ¶¶ 145, 148, 164, 167.)

Indeed, she alleges that she "missed a stunt" specifically because she did not have

the accommodations she requested.  (*Id.* ¶ 124.)  Davis alleges that her mother

informed her cheerleading coaches and Craig of her need for specific

accommodations, yet she never received them.  (*Id.* ¶¶ 117–21.)  "Refusing to

make reasonable accommodations[10] is tantamount to denying access," and Davis

alleges that her requests for accommodations were refused, so her allegations

satisfy the causation standard of both Title II of the ADA and the RA.  *Durham*, 82

F.4th at 226; *Murphy v. Justs. of the Peace*, No. 24-1710, 2025 WL 2848986, at *4

(3d Cir. Oct. 8, 2025) ("Because the constables refused Murphy's request to stop

---

[10] CVSD does not argue that the accommodation Davis requested was unreasonable.  (*See* Doc. 40, pp. 17–19; Doc. 43, pp. 4–6.)  Moreover, whether a requested accommodation is a fundamental alteration of a program and is therefore unreasonable is usually not susceptible to resolution on a motion to dismiss because it involves a fact-intensive inquiry.  *Frazier*, 603 F. Supp. 3d at 170.

the eviction when he had not been given notice in a form understandable to a person with blindness, the Murphys sufficiently alleged causation under both Title II and Section 504.") (quoting *Durham*, 82 F.4th at 226).  Accordingly, the court will not dismiss Davis's ADA and RA claims for failure to allege causation.

Moreover, Davis has sufficiently alleged that CVSD intentionally discriminated against her, so she has stated a claim for compensatory damages under Title II of the ADA and the RA.  (*See id.* ¶¶ 117–21.)  Intentional discrimination is established in Title II of the ADA and Section 504 of the RA claims through a showing of deliberate indifference.  *Furgess*, 933 F.3d at 289.  To establish deliberate indifference, Davis must show that CVSD had "knowledge that a federally protected right is substantially likely to be violated" and failed to act "despite that knowledge."  *Id.* at 292 (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)).  Here, Davis and her mother notified her coaches and Craig of her need for accommodations to participate safely in cheerleading, and Craig and the coaches failed to provide those accommodations despite Davis's requests.  (*Id.* ¶¶ 117–21.)  Accordingly, Davis has sufficiently alleged intentional discrimination under a deliberate indifference standard at this stage.  *See Furgess*, 933 F.3d at 292 (holding that both prongs of the deliberate indifference test were met because disabled plaintiff requested an accessible shower facility in prison multiple times and prison officials did not provide him

21

with accommodations for three months); *Durham*, 82 F.4th at 226 ("[Plaintiff] made numerous prison officials aware that he had a cane, needed a cane to walk, and was in severe pain without it.  Despite this, he was continuously denied his cane and shower accommodations.  This alone was sufficient to allege a deliberate indifference claim."). [11]

CVSD also argues that Davis cannot recover emotional distress damages pursuant to the ADA or RA.  (Doc. 40, p. 19.)  Davis does not seek to recover emotional distress damages in Counts I and II of her amended complaint; according to the pleadings, she only requests compensatory damages. (Doc. 28, ¶¶

---

[11] In its brief in support of its motion to dismiss, CVSD briefly argues that CVSD and Craig had "no involvement whatsoever in the cheer-position determinations . . . ." (Doc. 40, p. 18.)  Courts of Appeals disagree over, and the court is unaware of any Third Circuit opinion directly addressing whether "a public entity can be held vicariously liable under Title II of the ADA or Section 504 for money damages for the conduct of its employees or its agents . . . ."  *Vincent C. v. Pennsbury Sch. Dist.*, No. CV 24-06340, 2025 WL 2524221, at *11 (E.D. Pa. Sept. 2, 2025) (collecting cases); *but cf. Waters v. Amtrak*, 456 F. Supp. 3d 666, 671 (E.D. Pa. 2020) (finding that public entities may be vicariously liable for the acts of their employees pursuant to Title II of the ADA).  At this stage, regardless of the answer to the vicarious liability question and without further briefing from the parties, Davis has adequately stated a claim for compensatory damages against CVSD by alleging it was deliberately indifferent to her need for accommodations, and therefore intentionally discriminated against her because of her disability.  Here, Davis pleaded that she notified her coaches and the athletic director of her need for accommodations, yet they failed to provide those accommodations. (Doc. 28, ¶¶ 117–21.)  The court infers, at this stage, that the coaches and athletic director had authority to accommodate Davis.  *Cf. Vincent C.*, 2025 WL 2524221, at *11–*12 (finding that a school district could not be held vicariously liable for the actions of its agents under Title II of the ADA or the RA, and holding that the plaintiff did not allege deliberate indifference from the school district because he did not report discriminatory actions to district officials or "any one with the authority to take remedial action to address the wrongdoing").  Davis has sufficiently alleged that CVSD knew that her "right under the [ADA and RA] to be free from disability discrimination" was likely to be violated, and it failed to act despite that knowledge.  *Durham*, 82 F.4th at 226.

154, 170.)  She argues that she seeks compensatory damages "related to the treatment for emotional injury and not the emotional injury itself" in Counts I and II.  (Doc. 41, p. 5.)  CVSD argues that this type of compensatory damages is also unrecoverable under Title II of the ADA and Section 504 of the RA.  (Doc. 43, pp. 4–5.)

To the extent Davis seeks compensatory damages based on the treatment of any emotional injury she suffered, the court declines to categorically decide, at this stage of litigation, whether that type of compensatory damages is recoverable under the RA and Title II of the ADA without further factual context.  *See J.L. v. Lower Merion Sch. Dist.*, No. CV 20-1416, 2024 WL 5250301, at *8 (E.D. Pa. Dec. 30, 2024) (finding, in ruling on a motion in limine, that emotional distress damages are unrecoverable under both the RA and the ADA and then finding that future non-educational psychiatric treatment expenses were not recoverable because they qualified as emotional distress damages) (discussing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022)).  Therefore, the court will deny CVSD's motion to dismiss Davis's Title II of the ADA and Section 504 of the RA claims, Counts I and II of the amended complaint.  (Doc. 36, pp. 3–4.)

### C. Davis Does Not State a Sex-Based Equal Protection Claim Against the Individual Defendants or CVSD.

Davis alleges Defendants subjected her to sex-based discrimination in violation of the Equal Protection Clause by "providing preferential treatment to

23

male athletes" and "participating in, condoning, or being deliberately indifferent to the discriminatory hostile environment within CVSD . . . ." (Doc. 28, ¶¶ 171–181.) Davis brings an equal protection claim against all Defendants in her amended complaint. (*Id.*)

To state a constitutional claim through 42 U.S.C. § 1983, Davis must plausibly "allege the violation of a right secured by the constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1998). To state an Equal Protection claim against a municipal entity like CVSD via Section 1983, Davis must allege that the discrimination she suffered "implements or executes a policy, regulation or decision officially adopted by [CVSD] or informally adopted by custom." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir.1996)); *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). A municipality may also be liable pursuant to Section 1983 when a constitutional injury is "caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice . . . .'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quoting *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)). But if there is no underlying constitutional violation, there can be no municipal liability. *Mulholland*, 706 F.3d at 238 n.15; *Mills v. City of Harrisburg*,

350 Fed. Appx. 770, 773, n.2 (3d Cir. 2009) ("Absent an underlying constitutional violation by an agent of the municipality . . . the municipality itself may not be held liable under § 1983.").  So the court first determines whether Davis pleads an underlying constitutional violation, committed by the individual Defendants or other CVSD agents, before examining CVSD's policies and customs.  *See id.*

Harold "Bud" Shaffner, Rausch, Kristi Shaffner, and Mullin argue that Davis does not allege that they treated her differently from similarly situated individuals in an unprotected class.  (Doc. 33, pp. 5–6.)  Specifically, she does not allege that Defendants treated similarly situated male athletes more favorably than her.  (Doc. 42, p. 8.)  Nor does she allege that Harold "Bud" Shaffner, Rausch, Kristi Shaffner, and Mullin intentionally discriminated against her.  (Doc. 33, pp. 6–8.)  Craig and CVSD offer similar arguments about the sufficiency of the amended complaint's allegations against them.  (Doc. 40, pp. 23–25; Doc. 43, pp. 8–10.)

In response, Davis argues her amended complaint provides "specific examples of conduct" supporting Equal Protection claims against the individual Defendants and CVSD.  (Doc. 41, pp. 3–5.)  She also claims that the "new information" contained in her amended complaint "states exactly how" she was "treated differently from male athletes."  (*Id.* at 6–7.)  Her briefing does not,

however, identify the new information, nor explain how she is similarly situated to any male athletes mentioned in the amended complaint.  (*Id.*)

The Equal Protection Clause "prohibits any state from denying to any person within its jurisdiction the equal protection of the laws," and "[s]ex discrimination at school violates equal protection."  *Brooks v. State Coll. Area Sch. Dist.*, 707 F. Supp. 3d 448, 467 (M.D. Pa. 2023) (first quoting U.S. Const. amend. XIV, § 1; and then quoting *Doe v. N. Penn Sch. Dist.*, 636 F. Supp. 3d 519, 533 (E.D. Pa. 2022) (cleaned up)).  Sex-based classifications are "inherently suspect and trigger intermediate scrutiny," so they must be "substantially related to an important government objective."  *Id.* (quoting *Clark v. Jeter*, 486 U.S. 456, 461 (1988)).[12]

To plead a sex-based Equal Protection Clause claim, a plaintiff must show purposeful discrimination because of their sex by alleging "(1) disparate treatment in relation to other similarly situated individuals, and (2) that the discriminatory treatment was based on sex."  *Id.* (quoting *Johnston v. Univ. of Pittsburgh of the Commonwealth Sys.*, 97 F. Supp. 3d 657, 667 (W.D. Pa. 2015)).  As to the first

---

[12] Like the parties in *Brooks*, the parties here disagree over whether Davis properly alleges that she suffered intentional discrimination as a CVSD student; they do not address whether a specific CVSD policy or rule that caused that discrimination satisfies intermediate scrutiny.  707 F. Supp. 3d at 467 n.168 ("However, the parties never reach this inquiry, so the Court only discusses whether discrimination has been plausibly alleged."); *see Epps v. City of Pittsburgh*, 33 F. Supp. 2d 409, 415 (W.D. Pa. 1998) (finding that the plaintiff failed to state a sex-based equal protection claim because she did not allege that the defendant implemented a specific policy for the purpose of discriminating against a specific class)

element, the plaintiff must plead facts sufficient to "make plausible the existence of such similarly situated parties." *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011).[13]  Parties are similarly situated when they are alike in all relevant respects. *Child.'s Health Def., Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 84–86 (3d Cir. 2024) (quoting *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020)), *cert. denied sub nom. Child.'s Health Def. v. Rutgers, the State Univ. of N.J.*, 144 S. Ct. 2688, 219 L. Ed. 2d 1302 (U.S. 2024).  As to the second element, it is not enough to allege that the plaintiff is female and she was treated differently from male athletes. *Brooks*, 707 F. Supp. 3d at 469 (citing *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015)).  She must also allege facts sufficient to "raise a plausible inference that an invidious discriminatory purpose was a motivating factor in the relevant decision." *Id.* (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34 (2020)) (internal quotation marks omitted); *Magalengo v. Pa. Interscholastic Athletic Ass'n, Inc.*, 796 F. Supp. 3d

---

[13] In *Brooks*, the court recognized that there "is some judicial confusion over whether a complaint must allege facts showing a similarly situated comparator and related instances of differential treatment to survive dismissal." 707 F. Supp. 3d at 468 n.171 (collecting cases). Nonetheless, the court adopted the approach set forth by the Third Circuit's non-precedential opinion in *Perano*, 423 F. App'x at 238, and the court does the same here. *Brooks*, 707 F. Supp. 3d at 468; *see also Wolfe v. City of Sunbury*, No. 4:24-CV-00251, 2024 WL 4989323, at *13 (M.D. Pa. Dec. 5, 2024); *Children's Health Def., Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 84–86 (3d Cir. 2024), *cert. denied sub nom. Child.'s Health Def. v. Rutgers, the State Univ. of N.J.*, 144 S. Ct. 2688, 219 L. Ed. 2d 1302 (U.S. 2024) (holding that plaintiffs failed to state an Equal Protection claim where they failed to make specific allegations demonstrating how they were similarly situated to another group of individuals).

28, 48 (E.D. Pa. 2025) (noting that a plaintiff asserting a sex-based equal protection claim must allege purposeful discrimination).

Davis does not sufficiently plead either element of her Equal Protection claim.  First, she does not allege the existence of similarly situated individuals in CVSD.  Davis claims Defendants "individually and collectively discriminated against [her] on the basis of her sex by providing preferential treatment to male athletes, which included covering up bad behavior while [her] request for reasonable accommodations led to retaliations and severe bullying and hostile treatment."  (Doc. 28, ¶ 177.)  Davis appears to refer to the male CVSD student athlete who hit a teammate, called another student a racial slur, and was suspended without being expelled from the district's athletic program.  (*See id.* at 48–50.)[14] She alleges that "CVSD has a long history of turning a blind eye or giving preferential treatment to its male athletes while complaints, such as those raised on behalf of Ms. Davis as per below, have been met with indifference or openly hostile behavior and retaliation."  (*Id.* ¶ 47.)  She also claims that she "believes, through various and numerous circumstances, that such preferential treatment to

---

[14] Davis alleges that "had she been a male athlete of such athletic caliber, CVSD and the other Defendants would have moved mountains to accommodate Ms. Davis with such efforts as, in the example cited above, were used to cover up and protect a star male athlete from his abhorrent conduct and indiscretions."  (Doc. 28, ¶ 122.)

male athletes occurred during the course of these events and is ongoing to this day and therefore avers the same." (*Id.* ¶ 51.)

But Davis's complaint offers no specific examples of male CVSD athletes or students receiving more favorable treatment than female athletes, nor does it explain how she is similarly situated to the male CVSD athlete who hit his teammate. (*Id.* ¶¶ 1–200.) Her brief in opposition to the motions to dismiss sheds no light on these issues, either. (Doc. 41, pp. 6–7 (arguing that "new information, as contained in the complaint, states exactly how [Davis] was treated differently from male athletes" but declining to elaborate on or cite to the "new information" exhibiting disparate treatment).

The CVSD student who hit his teammate is not like Davis in all relevant respects. *See Child.'s Health Def., Inc.*, 93 F.4th at 84. Davis alleges she suffered sex-based discrimination after asking for disability accommodations. (Doc. 28, ¶ 177.) The male student faced disciplinary action for hitting and using a racial slur against other students. (*Id.* ¶¶ 48–50.) It is not even clear that Davis and the male student participated in CVSD sports at the same time. (*Id.* (explaining that the student hit his teammate in 2015 and used a racial slur against another student in 2018)).

In a class-based Equal Protection claim, "the proper comparators are persons alike in all relevant respects except for membership in the class at issue." *Pugh v.*

*Cambria Cnty. Child. and Youth Servs.*, No. 3:26-CV-00119, 2026 WL 946243, at *5 n.15 (W.D. Pa. Apr. 8, 2026) (internal quotation marks omitted).  Davis and the male student are vastly different in many different relevant respects beyond sex. (*See* Doc. 28, ¶¶ 48–50, 177); *see Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022) ("Courts must isolate the factor allegedly subject to impermissible discrimination . . . Other factors explaining disparate treatment will usually preclude persons from being similarly situated.") (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)) (internal citations and quotation marks omitted).

Crucially, Davis does not allege that the male student—or any other specific male student—is disabled, received accommodations, or was protected from disability-based bullying or retaliation.  (Doc. 28 ¶¶ 1–200.)  Yet, Davis alleges that she was denied accommodations and then bullied and retaliated against because of her disability, and that CVSD and the individual Defendants contributed to those harms because of her sex.  (*See id.* ¶¶ 147–48.)  Davis fails to sufficiently allege the existence of similarly situated individuals by claiming only that this specific male student received preferential treatment.  *See Patterson v. Strippoli*, 639 F. App'x 137, 142 (3d Cir. 2016) (holding that, where plaintiff challenged the enforcement of a local ordinance under the Equal Protection Clause,

similarly situated parties were other property owners who violated the ordinance, not all property owners in the same community).

Beyond that one specific male student, Davis pleads only conclusory allegations about other parties who could be similarly situated to her. (*See*, *e.g.* Doc. 28, ¶ 47.)  Most of the allegations in her amended complaint are broad statements that male athletes receive preferential treatment from CVSD and are too general to make "plausible the existence of such similarly situated parties." *Perano*, 423 F. App'x at 238 (holding that a plaintiff who pleaded that he was treated differently from "other similarly situated residential and commercial developers" did not provide specific allegations establishing similarly situated parties); *see also Wolfe v. City of Sunbury*, No. 4:24-CV-00251, 2024 WL 4989323, at *13 (M.D. Pa. Dec. 5, 2024) ("In sum, the Court will demand factual matter setting out similar properties and examples of why they are subjected to differing standards, but it will not be overly exacting before discovery fleshes out the particular details of the case and the comparator properties.").  Neither these general allegations nor Davis's comparison to the specific male student are sufficient to satisfy the first element of her Equal Protection claim.  *See Children's Health Def., Inc.*, 93 F.4th at 85; *but cf. Brooks*, 707 F. Supp. 3d at 468–69 (finding that plaintiffs adequately alleged substantial similarity).

31

Second, Davis also fails to allege that any disparate treatment she faced was based on her sex. Her Equal Protection claim is based on the "harassment," "bullying," and "hostile environment"[15] she faced as a CVSD student as well as CVSD's decision to deny her request for disability accommodations. (Doc. 28, ¶¶ 171–81.) But these allegations, as presented in the amended complaint, have nothing to do with Davis's sex and everything to do with her disability. She alleges her coaches and Craig failed to provide accommodations for her disability, and then her coaches suggested she cheer elsewhere while preventing her from participating in competitions. (*Id.* at 118–123.) Davis specifically alleges that her teammates attempted to "bully and harass" her into quitting the team "as retaliation for requesting reasonable accommodations for her disability." (*Id.* at 123.) She claims the "bullying and harassment [she] received from her teammates was directly related to her disability and the Defendants condoned such behavior or were aware of the same and did nothing." (*Id.* at 131.)

Davis alleges that "her treatment would have been entirely different in these circumstances," and that Defendants "would have moved mountains to accommodate" her had she been a male athlete at CVSD. (*Id.* ¶¶ 122, 132.) But

---

[15] Davis fails to state an Equal Protection violation on the basis of deliberate indifference to student-on-student sex-based harassment because she alleges she suffered bullying as a result of her disability, not because of her sex. (Doc. 28, ¶ 131); *see Doe v. Red Lion Area Sch. Dist.*, No. 1:24-CV-186, 2025 WL 19819, at *5 (M.D. Pa. Jan. 2, 2025) (explaining student-on-student harassment Equal Protection claims based on sex or gender).

she pleads no specific facts in support of these allegations.  *See Garrett*, 938 F.3d

at 92 (holding that "[c]onclusory allegations of liability are insufficient" to survive

a motion to dismiss) (quoting *Iqbal*, 556 U.S. at 678–79)).  She does not identify

any specific instance where a male student was treated differently from a

comparable female student.  *Magalengo*, 796 F. Supp. 3d at 48.  ("[Plaintiff] points

to no instances of students assigned female at birth being treated differently than

those assigned male at birth, and, as such, she has failed to plausibly state a claim

for sex-based discrimination.").  And as the court explained above, any comparison

to the male athlete who hit another student cannot form the basis of the second

element of Davis's Equal Protection claim.  *See Doe v. Williamsport Area Sch.

Dist.*, 699 F. Supp. 3d 306, 324 (M.D. Pa. 2023) ("[Plaintiff] provides insufficient

detail regarding WASD's handling of [the comparator's] complaints to compare it

to his own . . . So the Court cannot compare the two investigations to assess

whether any racially-motivated difference occurred. No allegation appears to link

the different results to a discriminatory purpose.").

Davis need not rule out every alternative explanation for an allegedly

discriminatory action to survive a motion to dismiss.  *Brooks*, 707 F. Supp. 3d at

470.  But she must plead facts demonstrating that a sex-based discriminatory

motive is plausible.  *See id*.  The plaintiffs in *Brooks* satisfied this requirement by

alleging the Defendants engaged in specific actions and made specific statements

that could "plausibly be interpreted as tainted by gender bias." *Id.* at 471. Davis's amended complaint contains no similar allegations. Therefore, she fails to plead intentional discrimination based on sex, so she cannot satisfy the second element of her Equal Protection claim. *Andrews*, 895 F.2d at 1478. And because she has not established that her Equal Protection rights were violated, she cannot sustain a *Monell* claim against CVSD. *Mulholland*, 706 F.3d at 238 n.15.

For these reasons, the court will grant Defendants' motions to dismiss Count III of the amended complaint. (Doc. 31, pp. 3–4; Doc. 36, pp. 4–5.)[16] But amendment is not futile, so the court dismisses Davis's Equal Protection claim against all Defendants (Count III) without prejudice. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

### D. Davis Does Not Allege that CVSD Discriminated Against Her Based on Her Sex in Violation of Title IX.

Count IV of the amended complaint raises a Title IX claim against CVSD. (Doc. 28, ¶¶ 182–189.) Davis alleges she was a female CVSD student who was qualified to "participate in CVSD's athletic programs and extracurricular activities" and that CVSD knew about her hearing disability and her need for accommodations. (*Id.* ¶¶ 184–85.) She claims CVSD "refused" her these accommodations "while providing preferential treatment to male athletes including

---

[16] The court does not reach Defendants' other arguments for dismissal, such as the application of qualified immunity. (*See* Doc. 40, pp. 32–33.)

covering up bad behavior of its star male athletes." (*Id.* ¶ 186.)  Davis alleges

CVSD "has a long-running pattern and practice of providing preferential treatment

to its male athletes" and that its "actions and omissions" caused Davis to be

"treated less favorably than similarly situated male athletes." (*Id.* ¶¶ 187–88.)

CVSD argues that Davis's allegations are conclusory and do not establish a

Title IX violation. (Doc. 40, pp. 37–38.)  It claims the amended complaint does

not explain how Davis's description of the male student who hit his teammate

establishes sex discrimination, and the amended complaint does not allege that

Davis informed Craig or CVSD of "perceived sex discrimination." (*Id.* at 38.)

Beyond general statements, CVSD avers that the amended complaint does not

allege that the District knew about sex discrimination Davis suffered. (*Id.* at 39.)

And CVSD argues that Davis cannot recover emotional distress and punitive

damages under Title IX. (*Id.*)  It argues that Davis "fails to present direct evidence

of discrimination in the Title IX context, fails to identify a similarly situated

comparator, and offers no alternative means of establishing how the District's

alleged failure to accommodate [Davis's] alleged disability constitutes sex

discrimination." (Doc. 43, p. 12.)

Davis claims she sufficiently alleges that CVSD knew about the

discrimination she faced and failed to address it. (Doc. 41, p. 7.)  And she argues

that she need not identify students who were treated differently on the basis of sex

because that is not a prima facie element of her Title IX claim. (*Id.* at 7–8.) Although she recognizes that "there is certainly some Federal District Court case law that has made the determination that punitive and/or emotional damages are not available in Title IX claims," she argues that "a final determination as to the availability of these damages have yet to be made." (*Id.* at 5.)

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). There is an implied private right of action under Title IX through which plaintiffs may recover money damages so long as the defendant and federal funding recipient had notice that it could be liable for the discriminatory conduct. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639–640 (1999).

"To establish a prima facie case of discrimination under Title IX, a plaintiff must allege (1) that he or she was subjected to discrimination in an educational program, (2) that the program receives federal assistance, and (3) that the discrimination was on the basis of sex." *A.H. v. Minersville Area Sch. Dist.*, 290 F. Supp. 3d 321, 326 (M.D. Pa. 2017) (quoting *Evancho v. Pine–Richland Sch. Dist.*, 237 F. Supp. 3d 267, 295 (W.D. Pa. 2017)); *Brooks*, 707 F. Supp. 3d at 464

36

(quoting *A.H.*, 290 F. Supp. at 326). A federal funding recipient is only liable under Title IX for its own misconduct, so:

> The recipient itself must exclude persons from participation in, deny persons the benefits of, or subject persons to discrimination under its programs or activities in order to be liable under Title IX. To be liable, funding recipients must have notice of their potential liability. To the extent that a Title IX claim is predicated on a third-party's actions, plaintiffs must plead facts supporting the conclusion that the defendant acted with deliberate indifference.

*Magaglengo*, 796 F. Supp. 3d at 43 (quoting *Davis*, 526 U.S. at 640–43) (cleaned up). Davis does not satisfy the third element of her Title IX claim. *See A.H.*, 290 F. Supp. at 326. She alleges that "CVSD refused . . . reasonable accommodations to Ms. Davis while providing preferential treatment to male athletes including covering up bad behavior of its star male athletes." (Doc. 28, ¶ 186.) But claiming that CVSD covered up the "bad behavior" of its male athletes does not demonstrate that the district denied Davis accommodations or treated her less favorably than male athletes in the district—the allegedly discriminatory acts—because of her sex. (*Id.* ¶ 188.)

Davis broadly alleges that, had she been a male student athlete in CVSD, she would have been treated differently. (*Id.* ¶¶ 47, 51, 122, 132, 177, 179, 179(b), 186–88.) Her briefing does not explain how these allegations are sufficient to state a Title IX claim, Doc. 41, pp. 7–8, and the amended complaint's conclusory allegations do not establish that CVSD discriminated against Davis by denying her

accommodations because of her sex.  *See Winter v. Pa. State Univ.*, 172 F. Supp. 3d 756, 775 (M.D. Pa. 2016) (finding, in the Title IX employment context, that a plaintiff "alleging racial or gender discrimination by a university [under Title IX] must do more than recite conclusory assertions"); *Colombo v. Bd. of Educ. for Clifton Sch. Dist.*, No. 2:11-CV-00785, 2017 WL 4882485, at *10 (D.N.J. Oct. 29, 2017) ("To survive a motion to dismiss on a Title IX claim, it is true that a plaintiff does not need to provide detailed factual support for its allegations but the plaintiff's allegations must amount to more than mere conclusory allegations.") (quoting *Butler v. Mountain View Sch. Dist.*, No. 3:12-CV-2038, 2013 WL 4520839, at *7 (M.D. Pa. Aug. 26, 2013)); *Humphries v. Pennsylvania State Univ.*, 492 F. Supp. 3d 393, 403 (M.D. Pa. 2020) ("Because Plaintiff does not allege that he was harassed because of sex, his claim under Title IX must fail.").

Accordingly, the court will grant CVSD's motion to dismiss Count IV of the amended complaint.  (Doc. 36, pp. 5–7.)[17]  Amendment is not futile, so the court will dismiss Davis's Title IX claim (Count IV) without prejudice.

### E. Defendants' Motions to Dismiss Davis's IIED and NIED Claims will be Granted in Part and Denied in Part.

Davis brings IIED and NIED claims against all defendants.  (Doc. 28, ¶¶ 190–200.)  CVSD, Harold "Bud" Shaffner, Rausch, and Craig each claim they are

---

[17] Because the court will dismiss Davis's Title IX claim on this basis, it does not address CVSD's alternative arguments such as those about damages.  (*See* Doc. 40, pp. 39–40.)

immune from Davis's state tort claims.  (Doc. 33, p. 9; Doc. 40, pp. 25–28.)

CVSD and Craig argue that they are immune from Davis's tort claims pursuant to

the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA").  (Doc. 40, pp.

25–28.)  Harold "Bud" Shaffner and Rausch argue that, as Board members, they

have high public official immunity that shields them from Davis's tort claims.

(Doc. 33, p. 9.)  Davis argues that the court should not consider Defendants'

immunity arguments at the motion to dismiss stage.  (Doc. 41, pp. 5–6.)  But a

party may raise an affirmative defense, like immunity, at the motion to dismiss

stage if the defense "is apparent on the face of the complaint."  *Budhun v. Reading*

*Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citing *Ball v. Famiglio*, 726

F.3d 448, 459 n.16 (3d Cir. 2013)).[18]  Therefore, the court addresses Defendants'

immunity arguments before analyzing the merits of Davis's IIED and NIED

claims.

### 1. Pennsylvania Political Subdivision Tort Claims Act Immunity Shields CVSD From Both of Davis's Tort Claims and Craig from Davis's NIED Claim.

The PSTCA provides immunity to any "local agency" for "any damages on

account of any injury to a person or property caused by any act of the local agency

---

[18] *Price v. City of Philadelphia*, 239 F. Supp. 3d 876, 885 (E.D. Pa. 2017) (describing Pennsylvania Political Subdivision Tort Claims Act immunity as an affirmative defense); *Perkey v. Albert Gallatin Sch. Dist.*, No. 2:23-CV-1326, 2024 WL 4122253, at *17 (W.D. Pa. Sept. 9, 2024) (describing high public official immunity as an affirmative defense).

or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. The

PSTCA extends this immunity to the local agency's employees:

> An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

*Id.* § 8545. The PSTCA provides an exception to this immunity when two specific

conditions are met. First, a party may recover damages from a local agency only

when the damages "would be recoverable under common law or a statute creating

a cause of action if the injury" were caused by a person who could not claim

PSTCA or official immunity. *Id.* § 8542(a)(1). Second, the injury must be

"caused by the negligent acts of the local agency or an employee thereof acting

within the scope of his office or duties with respect to" one of nine specific

categories listed in the statute. *Id.* § 8542(a)(2). Those nine categories are: (1)

vehicle liability; (2) care, custody, or control of personal property; (3) real

property; (4) trees, traffic controls, and street lighting; (5) utility service facilities;

(6) streets; (7) sidewalks; (8) care, custody, or control of animals; and (9) sexual

abuse. *Id.* § 8542(b).

A plaintiff may not recover damages from a local agency for employee

actions that qualify as a "crime, actual fraud, actual malice or willful misconduct,"

because these are not "negligent acts." *Id.* §§ 8542(a)(2); 8550. "Otherwise stated,

the term willful misconduct is synonymous with the term intentional tort." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)) (internal quotation marks omitted); *see Doe v. Williamsport Area Sch. Dist.*, No. 4:22-CV-01387, 2023 WL 3136409, at *13 (M.D. Pa. Apr. 27, 2023). Therefore, Pennsylvania courts recognize that:

> While local agencies cannot be held liable for intentional torts committed by their employees, a local agency may be liable for damages that are "(1) recoverable under common law or a statute creating a cause of action; (2) caused by the negligent act of the local agency or its employees acting within the scope of their employment; and (3) caused by one of the specific acts enumerated in Section 8542(b) of the Act."

*West on behalf of S.W. v. Pittsburgh Pub. Schs.*, 327 A.3d 340, 344 (Pa. Commw. Ct. 2024) (en banc) (quoting *Gillingham v. Cnty. of Delaware*, 154 A.3d 875, 878 (Pa. Commw. Ct. 2017)).  The court must interpret the exceptions to PSTCA immunity listed in § 8542(b) narrowly.  *City of Phila. v. J.S.*, 353 A.3d 566, 576 (Pa. 2026).

CVSD qualifies as a "local agency" pursuant to 42 Pa. Cons. Stat. § 8541. *Sanford*, 456 F.3d at 315 ("Under the [PSTCA], local agencies such as school districts are given broad tort immunity."); *Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 217 (M.D. Pa. 2016) (noting that school districts qualify as local agencies for the purpose of PSTCA immunity).  Davis's IIED claim seeks to hold CVSD liable for its employees' intentional tort.  (Doc. 28, ¶ 194.)  "[L]ocal

41

agencies cannot be held liable for intentional torts committed by their employees . . . " because a local agency's PSTCA immunity is only waived for specific negligent acts. *West*, 327 A.3d at 344; *see also Rogers v. Pocono Mountain Sch. Dist.*, No. 3:21-CV-02072, 2023 WL 4377071, at *9 (M.D. Pa. July 6, 2023) ("Lesoine, an employee of the School District who allegedly engaged in willful misconduct, could be individually liable under the PSTCA, but that liability would not exten[d] to the local agency employing him, the School District.") (citing *B.D. by & through B.D. v. Cornwall Lebanon Sch. Dist.*, No. 1:20-CV-01944, 2021 WL 1253522, at *19 (M.D. Pa. Apr. 5, 2021)); *Bryant v. Pottsgrove Sch. Dist.*, No. CV 25-3140, 2025 WL 2691044, at *13 (E.D. Pa. Sept. 19, 2025).  Therefore, CVSD is immune to Davis's IIED claim under the PSTCA.

Craig is a CVSD employee, but he is not immune from Davis's IIED claim under the PSTCA.[19]  (Doc. 28, ¶¶ 14, 190–94.)  When a plaintiff sues a local agency employee "on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct," the employee's immunity that is coextensive with that of the

---

[19] Davis alleges that Kristi Shaffner and Mullin are also CVSD employees.  (Doc. 28, ¶¶ 22, 24.)  Those Defendants did not raise a PSTCA immunity defense in their motion to dismiss.  (*See* Doc. 33, pp. 1–15.)

employing agency does not apply.  42 Pa Cons. Stat. § 8550.  At this stage, the court finds that it is premature to dismiss Davis's IIED claim against Craig because she alleges he acted intentionally and willfully, Doc. 28, ¶ 193.  *See Gorrio v. Briggs*, No. 1:23-CV-01697, 2025 WL 2177826, at \*13 (M.D. Pa. July 31, 2025) ("On the other hand, at least on their face, the PSTCA would not bar Gorrio's state-law claims for false imprisonment, IIED, false/fraudulent misrepresentation, and assault and battery because they are intentional torts.") (collecting cases); *Cappel v. Aston Twp. Fire Dep't*, 693 F. Supp. 3d 467, 495 (E.D. Pa. 2023) ("But Ms. Cappel's intentional infliction of emotional distress claim, 'by its very nature, is a claim of willful misconduct.'") (quoting *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 930 (M.D. Pa. 2015), *aff'd*, 666 F. App'x 213 (3d Cir. 2016)).

CVSD and Craig[20] are both immune to Davis's NIED claim under the PSTCA.  (Doc. 28, ¶¶ 195–200.)  That claim alleges Defendants acted negligently by ignoring or participating in the discrimination and bullying Davis allegedly suffered.  (*Id.* ¶¶ 196–97.)  The nine exceptions to PSTCA immunity for specific negligent acts do not include ignoring or participating in bullying or discrimination.  *See* 42 Pa. Cons. Stat.  § 8542(b).  CVSD's PSTCA immunity

---

[20] Davis's amended complaint does not suggest that Craig acted outside his official duties in denying her accommodations.  (*See* Doc. 28, ¶¶ 118–121); *see* 42 Pa. Cons. Stat. § 8545.

therefore extends to Craig, and Davis's NIED claim is barred.  *Id.* §§ 8541, 8542(b), 8545.

The court will grant CVSD's motion to dismiss Davis's IIED and NIED claims, Counts V and VI, and will dismiss those claims against CVSD with prejudice because amendment would be futile.  (Doc. 36, pp. 7–8); *Fletcher-Harlee Corp.*, 482 F.3d at 251.  It will grant Craig's motion to dismiss the NIED claim Davis raises against him and will dismiss that claim with prejudice because amendment would be futile.[21]  (Doc. 36, pp. 7–8); *Fletcher-Harlee Corp.*, 482 F.3d at 251.  The court will deny Craig's motion to dismiss Davis's IIED claim against him on the basis of PSTCA immunity.  (Doc. 36, p. 7.)

### 2. Harold "Bud" Shaffner and Rausch are Immune to Davis's IIED and NIED Claims Because They are High Public Officials.

Harold "Bud" Shaffner and Rausch argue that they are immune to Davis's IIED and NIED claims because they are CVSD School Board members and high public officials.  (Doc. 33, pp. 9–10.)  "In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority."

---

[21] Even if the court found that the PSTCA did not shield Craig from Davis's NIED claim, it would dismiss that claim for the reasons explained below.

*Doe v. Franklin Cnty.*, 174 A.3d 593, 603 (Pa. 2017). Under this doctrine, Harold "Bud" Shaffner and Rausch are immune to Davis's claims if (1) they qualify as high public officials, and (2) they acted "in the course of [their] duty or power" and "within the scope of [their] authority" when committing allegedly tortious conduct. *Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 561 (W.D. Pa. 2019) (citing *Mollan v. Lindner*, 677 A.2d 1194, 1199 (Pa. 1996)). High public official immunity is analyzed on a case-by-case basis, and the court considers the official's duties, the importance of the official's office, and whether that official's duties involve policymaking to determine whether it applies. *Doe*, 174 A.3d at 603 n.10 (citing *Montgomery v. City of Phila.*, 140 A.2d 100, 105 (Pa. 1958)).

School board members in Pennsylvania are high public officials. *Taylor v. Derry Twp. Sch. Dist.*, No. 1:20-CV-1363, 2022 WL 80479, at *10 (M.D. Pa. Jan. 7, 2022). A "large majority" of district courts in Pennsylvania have so held. *Caristo*, 370 F. Supp. 3d at 563 (collecting cases). School board members have "extensive and important duties" including voting on whether to terminate or suspend a district's superintendent, levying and collecting taxes, the "establishment and maintenance of elementary public schools," and "operating all food service programs." *Id.* at 564 (citing 24 Pa Stat. §§ 10-1080, 5-501, 5-504.1, 5-507). Thus, school board members make policy for their school district. *Id.* (first citing *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002); and then

45

citing *Lindner v. Mollan*, 677 A.2d 1194, 1199 (Pa. 1996)).  Davis's amended

complaint describes Harold "Bud" Shaffner and Rausch's policymaking role.

(Doc. 28, ¶¶ 12, 17, 20 (noting that Rausch and Shaffner, as Board members, are

responsible for "making and enforcing CVSD policies and procedures")).  Harold

"Bud" Shaffner and Rausch therefore qualify as high public officials as school

board members and satisfy the first element of their immunity defense.  *Caristo*,

370 F. Supp. 3d at 563; *see also Kipp v. Bellefonte Area Sch. Dist.*, 349 A.3d 239,

2025 WL 2837404, at *16 (Pa. Commw. Ct. Oct. 7, 2025) ("[S]chool board

members and school superintendents are entitled to high public official immunity

when they act within the scope of their duties and authority.") (first citing *Matta v.*

*Burton*, 721 A.2d 1164, 1166 (Pa. Commw. Ct. 1998); and then citing *Batgos v.*

*Calloway*, 316 A.3d 661, 2024 WL 1131335, at *6–*7 (Pa. Commw. Ct. Mar. 15,

2024)) (unpublished table decision).

Davis appears to allege that the two Board members caused her emotional

distress by failing to remedy the discrimination and bullying she faced; she does

not allege that Rausch or Shaffner took any specific, affirmative action against her.

(Doc. 28, ¶¶ 190–200.)  If anything, she claims they exercised their authority

incorrectly, not that they acted outside of it.  (*See id.* ¶¶ 17, 20 (alleging that

Rausch and Shaffner are responsible for immediately addressing bullying,

harassment, and discrimination).)  The court will therefore grant Harold "Bud"

46

Shaffner and Rausch's motion to dismiss Davis's IIED and NIED claims against them. (Doc. 31, pp. 6–7.) The court will dismiss those claims with prejudice because amendment would be futile.

### 3. The Court Will Deny Craig, Kristi Shaffner, and Mullin's Motions to Dismiss Davis's IIED claim.

Davis's IIED claim against Craig, Kristi Shaffner, and Mullin, raised in Count V of her amended complaint, remains. (Doc. 28, ¶¶ 190–94.) Davis alleges that Defendants intentionally acted extremely and outrageously and caused her severe emotional distress. (*Id.* ¶ 192.)

The court assumes Davis's claim against Kristi Shaffner and Mullin is based on (1) their refusal to provide accommodations to Davis, making cheerleading more dangerous for Davis and her teammates; (2) suggesting that Davis cheer elsewhere when she requested accommodations; (3) preventing her from competing after she requested accommodations; and (4) encouraging Davis's cheer teammates and their parents to bully and harass her even after she left the team. (*Id.* ¶¶ 117–33.) The court assumes Davis raises an IIED claim against Craig because he allegedly ignored her request for accommodations and, construing all reasonable inferences in her favor, allegedly allowed her coaches and teammates to bully her and discriminate against her. (*Id.* ¶¶ 119–121, 151.) Davis alleges that she engaged in self-harm and suffered multiple physical injuries as a result of the "discrimination, harassment, and bullying she endured . . . ." (*Id.* ¶¶ 136, 138.)

47

Craig, Kristi Shaffner, and Mullin all argue that their conduct, as alleged in the amended complaint, was not extreme or outrageous, so Davis does not state an IIED claim against them. (Doc. 33, p. 10; Doc. 40, pp. 29–30; Doc. 42, pp. 9–10; Doc. 43, pp. 6–7.) In response, Davis merely recites the standard elements of an IIED claim under Pennsylvania law, argues that the "treatment of children in such fashion as outlined in the First Amended Complaint" is sufficiently outrageous, and claims that she has "pled the other elements required for an IIED claim and therefore should be permitted by this Court to proceed" without citing the amended complaint. (Doc. 41, p. 8.)

To state a claim for intentional infliction of emotional distress, Davis must allege "intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff and some type of resulting physical harm due to the defendant's conduct." *Davis v. Wigen*, 82 F.4th 204, 216 (3d Cir. 2023) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)) (internal quotation marks omitted); *see Bootay v. KBR, Inc.*, 437 F. App'x 140, 146 (3d Cir. 2011) (noting that the defendant's action may be either intentional or reckless) (quoting *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 84 (3d Cir.1987)). Only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

48

intolerable in a civilized society" creates IIED liability. *Davis*, 82 F.4th at 216 (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

Davis's amended complaint contains facts that clear this high bar at the motion to dismiss stage. The court may determine, on a motion to dismiss, that a defendant's alleged behavior is simply not outrageous enough to sustain an IIED claim. *See id.* But here, Davis has alleged that her cheerleading coaches denied her disability accommodations and made competing unsafe, kept her from competing because she asked for those accommodations, and encouraged her teammates and their parents to bully her about her disability. (Doc. 28, ¶¶ 117–33.) She alleges that Craig knew about the lack of accommodations and the disability discrimination she faced and did nothing. (*Id.* ¶¶ 119–121, 151.) And she alleges she suffered a list of physical ailments due to Defendants' conduct. (*Id.* ¶¶ 136, 138.) At the motion to dismiss stage, without the benefit of a fully developed factual record, the court finds that Davis has adequately stated an IIED claim against Craig, Kristi Shaffner, and Mullin.[22] *See McCoy-Jones v. Indiana Borough*, No. CIV.A. 12-152, 2012 WL 3686773, at *8 (W.D. Pa. Aug. 24, 2012) (noting that, although the court may initially determine whether a defendant's

---

[22] Craig briefly argues that the court should dismiss Davis's claim for punitive damages against him because he is a municipal employee acting in the scope of his employment. (Doc. 40, p. 35.) Although Craig's briefing argues that punitive damages may not be recovered from a "municipality," it does not explain why or how a tort-based punitive damages claim against an individual employee of a municipality is not recoverable for the same reasons. (*Id.*) Therefore, the court does not address Craig's argument.

actions are extreme and outrageous, that question is left to the jury where reasonable minds could differ as to outrageousness of the conduct and denying the defendant's motion to dismiss an IIED claim based on initiating a criminal prosecution without probable cause for lack of a complete factual record); *Martin v. Finley*, No. 3:15-CV-1620, 2017 WL 626752, at *6 (M.D. Pa. Feb. 15, 2017) (denying a motion to dismiss an IIED claim and noting that the issue of whether conduct was outrageous would be better evaluated at summary judgment). Therefore, the court will deny those Defendants' motions to dismiss Davis's IIED claim. (Doc. 31, p. 8; Doc. 36, p. 7.)

### 4. Davis's Amended Complaint Does Not Sufficiently Allege an NIED Claim Against Kristi Shaffner and Mullin.

Davis's NIED claim against Kristi Shaffner and Mullin remains for discussion. (Doc. 28, ¶¶ 195–200.) Therein, Davis alleges that each Defendant "owed a duty to abstain, or to implement measures to prevent, the discrimination and bullying levied upon Ms. Davis as a result of her disability." (*Id.* ¶ 196.) Instead, they "actively took part in, supported, aided, abetted, condoned, or were otherwise indifferent to the discrimination, harassment, and bullying Ms. Davis suffered and which these Defendants knew, or should have known, was occurring." (*Id.* ¶ 197.)

Kristi Shaffner and Mullin argue that there are only four categories of NIED claims recognized under Pennsylvania law, and Davis's claims fit none of them.

50

(Doc. 33, pp. 11–12; Doc. 42, p. 10.)  In response, Davis recites the legal standard applicable to an ordinary negligence claim and argues that "Defendants had a clear legal duty to abstain from the conduct complained of. Not only did they violate that duty by their actions, but it has been properly asserted that they did so in a reckless fashion."  (Doc. 41, p. 9.)

NIED claims in Pennsylvania are limited to four specific theories of recovery.  *Jordan v. Pa. State Univ.*, 276 A.3d 751, 774 (Pa. Super. Ct. 2022).  Those theories are:

> (1) situations where the defendant owed the plaintiff a pre-existing contractual or fiduciary duty (the special relationship rule); (2) the plaintiff suffered a physical impact (the impact rule); (3) the plaintiff was in a "zone of danger" and reasonably experienced a fear of immediate physical injury (the zone of danger rule); or (4) the plaintiff observed a tortious injury to a close relative (the bystander rule).

*Id.*[23]  Moreover, an NIED plaintiff must state an underlying negligence claim to proceed under any of the four recovery theories.  *Id.*

Even if Davis adequately pleads a negligence claim, her amended complaint does not contain facts sufficient to allege an NIED claim against Kristi Shaffner

---

[23] As to the first theory, "[t]here is a difference between duty-creating special relationships under negligence law and special relationships in a negligent infliction of emotional distress claim. The standard for the latter is far more stringent."  *De Camara v. Bryn Mawr Coll.*, No. CV 25-2287, 2025 WL 2779338, at *15 n.151 (E.D. Pa. Sept. 26, 2025) (quoting *Humphries v. Pa. State. Univ.*, No. 20-00064, 2021 WL 4355352, at *21 (M.D. Pa. Sept. 24, 2021)) (cleaned up).

and Mullin under any of the four recognized theories of recovery.[24]  *See id.*; (Doc. 28, ¶¶ 1–200.)  To the extent she alleges a special relationship with Kristi Shaffner and Mullin that could give rise to NIED liability, Count VI does not specify why those two defendants owed her a duty of care or how that duty of care fits within the special relationship via preexisting contractual or fiduciary duty category.  (*See* Doc. 28, ¶ 196 (alleging that Defendants owed "a duty to abstain, or to implement measures to prevent, the discrimination and bullying levied upon Ms. Davis as a result of her disability")); *see Humphries v. Pa. State Univ.*, No. 4:20-CV-00064, 2021 WL 4355352, at *20–*23 (M.D. Pa. Sept. 24, 2021), *aff'd*, No. 25-2122, 2026 WL 1021527 (3d Cir. Mar. 16, 2026) (analyzing the "special relationship" NIED liability theory in detail and recognizing that it did not apply to the relationship between a university and its students, athletes and their universities, or athletes and coaches); *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) (finding that an NIED claim failed as a matter of law because "the relationship between a college and its students does not obviously hold the potential of deep emotional harm" and the type of emotional distress at issue was not the type for which the plaintiff could recover on an NIED theory).

---

[24] Although Davis alleges that she experienced physical harm, she does not allege that her alleged emotional distress occurred as a result of physical harm she suffered or that she experienced emotional distress from the fear of an immediate physical injury.  (*See* Doc. 28, ¶¶ 195–200.)  Nor does she allege that a relative was injured in her presence.  (*Id.*)

52

Courts have specifically been reluctant to extend NIED liability under the special relationship theory to claims alleged by non-college students against their schools. *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 594 (W.D. Pa. 2019) (concluding that Pennsylvania courts "would not extend liability for the NIED tort to a case involving a relationship between a school and its student"); *Doe v. Hill Sch.*, No. CV 23-1210, 2023 WL 5339610, at *8 (E.D. Pa. Aug. 18, 2023) (finding no "Pennsylvania or Third Circuit authority suggesting that a private school has a special relationship with a student that could give rise to NIED liability" and refusing, as a federal judge sitting in diversity, "to dramatically expand liability under Pennsylvania law" to boarding schools "in the absence of any indication that the Pennsylvania courts would recognize such a duty"); *Henry v. Sch. Dist. of Phila.*, No. CV 19-1115, 2020 WL 6287492, at *8 (E.D. Pa. Oct. 27, 2020) (Noting that it is unclear whether a special relationship would exist between a school and its student where a disabled student's parents "entrust the school to take care of their vulnerable child" but dismissing the plaintiff's NIED claim on immunity grounds).

Davis does not provide facts sufficient to find that a special relationship existed between her, Kristi Shaffner, and Mullin. And in her brief in opposition to Defendants' motions to dismiss, she does not explain how her NIED claim fits into one of the four categories, even though both groups of Defendants raised the issue

53

in their briefs.  (Doc. 41, pp. 8–9; Doc. 33 pp. 11–12 (discussing the four recognized categories of NIED claims in Pennsylvania); Doc. 40, pp. 30–32 (same).)  Therefore, the court will grant Kristi Shaffner and Mullin's motion to dismiss Davis's NIED claim against them.  (Doc. 31, pp. 8–9.)  The court will dismiss Davis's NIED claim against Kristi Shaffner and Mullin without prejudice because amendment is not futile.

## F. The Court Will Deny Defendants' Motions to Strike Without Prejudice.

Defendants move to strike several paragraphs from Davis's amended complaint pursuant to Federal Rule of Civil Procedure 12(f) because they are redundant, immaterial, impertinent, or scandalous.  (Doc. 31, p. 9; Doc. 36, pp. 8–9.)  However, it is not clear to the court which allegations Defendants move to strike from the complaint.  Harold "Bud" Shaffner, Rausch, Kristi Shaffner, and Mullin move to strike paragraphs "45, 67 to 81, and 82 to 97" in their motion to dismiss and strike and in their reply to Davis's opposition.  (Doc. 31, p. 9; Doc. 42, p. 10.)  However, in their brief in support of their motion to dismiss and strike, they first argue that paragraphs "45, 67 to 71, and 77 to 92" of the amended complaint should be stricken and then argue on the same page that paragraphs "45, 72 to 81, and 82 to 97" should be stricken.  (Doc. 33, p. 12.)

CVSD and Craig do not identify the specific paragraph numbers they seek to strike from the amended complaint in their motion.  (Doc. 36, pp. 8–9.)  In their

54

brief in support of their motion to dismiss and strike, they argue that paragraphs "30-38, 41-43, 45 (a-k), 73-75, and 77-92" should be stricken.  (Doc. 40, p. 37.) The conclusion section of that brief lists individuals who are not parties to this case as defendants, and requests that paragraphs "59-67, 75(a-j), 78-81, 103-106, 110-112, 163, and 180 [] be stricken from the Amended Complaint."  (*Id.* at 40.)  Their reply requests that the same list—paragraphs "59-67, 75(a-j), 78- 81, 103-106, 110-112, 163, and 180"—be stricken from the amended complaint.  (Doc. 43, p. 14.)

The court cannot determine which specific paragraphs each group of Defendants seeks to strike from the amended complaint.  Therefore, the court will deny Defendants' motions to strike, Doc. 31, p. 9; Doc. 36, pp. 8–9, without prejudice and will grant Defendants leave to file their respective motions with greater specificity.

**CONCLUSION**

For the reasons explained herein, the court will grant in part and deny in part

Defendants' motions to dismiss and will deny their motions to strike without

prejudice.  An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: May 22, 2026

56